IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 1:20-cv-20921-AHS

FLORIDA FAIR HOUSING ALLIANCE,
INC.

    Plaintiff,

    v.

CORAL HAVEN APARTMENTS LLP,

    Defendant.

_____/

**DEFENDANTS' MOTION TO DISMISS COMPLAINT
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE
12(b)(6) AND INCORPORATED MEMORANDUM OF LAW**

Defendant, Coral Haven Apartments LLP ("Defendant"), by undersigned counsel, files this motion to dismiss the complaint of plaintiff, Florida Fair Housing Alliance, Inc. ("Plaintiff"), pursuant to Federal Rule of Civil Procedure 12(b0(6) and would show the Court as follows:

## INTRODUCTION

Plaintiff's complaint asserts a single cause of action against Defendant – the owner of an apartment complex - for violation of the Fair Housing Act. Plaintiff alleges that its employee/agent posed as a prospective tenant and had a single phone call with Defendant's agent, during which Plaintiff's agent/employee was purportedly told that "a felony criminal record would result in an automatic denial of an applicant seeking to rent" an apartment.

As will be set forth in greater detail below, Plaintiff's complaint fails to state a cause of action for unlawful discrimination based upon any class or characteristic protected by the Fair Housing Act. Similarly, the complaint fails to state a claim for unlawful disparate impact as the allegations concerning a single encounter are insufficient to create a policy and, even if they were

{M1717539.1}

sufficient to create a policy, the complaint lacks the requisite factual allegations to establish that any alleged policy has a disparate impact on a protected class.

**I.      Standards Governing Motions to Dismiss.**

Rule 12(b)(6) vests a party with the right to move to dismiss a complaint "for failure to state a claim upon which relief can be granted." Fed. R. Civ. Proc. 12. Dismissal for failure to state a claim is warranted if a cause of action does not contain specific factual matter, accepted as true, to state a claim that is plausible on its face and to suggest the required elements of the claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Neitzke v. Williams*, 490 U.S. 319, 326 (1989); *Watts v. Florida Int'l Univ.*, 495 F.3d 1289, 1296 (11th Cir. 2007); *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level … on the assumption that all the allegations in the complaint are true (even if doubtful in fact). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n. 1 (2002)). Thus, a complaint, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *Twombly*, 550 U.S. at 555; moreover, it must "'provide the defendant fair notice of what plaintiff[s'] claim[s]'" are, *Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 Fl.3d 1349, 1352 (11th Cir. 2005) (quoting *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 881 (11th Cir. 2003)).

**II.     Plaintiff Claims Unlawful Discrimination Under the Fair Housing Act From a Single Question to the Community Regarding the Effect of Its Agent/Employee's Criminal History**

Plaintiff's complaint alleges violation by Defendant of the federal Fair Housing Act, 42 U.S.C. § 3601 *et seq.* Specifically, Plaintiff alleges that its employee/agent – a convicted felon - contacted a rental apartment community owned by Defendant known as Coral Haven (the

"Community") to "test the [Community] for unlawful discriminatory housing practices." Complaint, ¶¶ 6. Plaintiff alleges that its employee/agent "posed as a potential rental applicant," and Defendant's agent told Plaintiff that the Community would automatically deny any applicant seeking to rent housing at the Community who has a "felony criminal record." Complaint, ¶¶ 6-7. Although Plaintiff's allegations make it clear that its agent/employee was not actually searching for an apartment but instead posing as a rental applicant, Plaintiff alleges that it "has suffered, is continuing to suffer, and will in the future suffer irreparable loss and injury and a real and immediate threat of future discrimination by Plaintiff." Complaint, ¶¶ 6, 25. Plaintiff does not allege that its agent/employee made Defendant aware of its agent/employee's race or national origin during the alleged phone call.

### III. A Prima Facie Case of Discrimination under the Fair Housing Act Requires Some Showing of Both Fact and Causation

Plaintiff's claims of both discriminatory intent and discriminatory effect under the Fair Housing Act are combined into a single cause of action under the Fair Housing Act. *See* Complaint, Count 1 – "Violation of the Fair Housing Act." As the two theories of discrimination have different elements for the successful assertion of a valid prima facie case, Defendant provides a separate analysis as to the two theories below.

### A. Plaintiff's Complaint Does Not Allege Unlawful Discrimination Based on Any Class or Characteristic Protected by the Fair Housing Act.

The Fair Housing Act makes it unlawful for any housing provider to "refuse to negotiate for the … rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status or national origin." Plaintiff's allegation of intentional unlawful discrimination is based on its claim that its agent/employee was told by the Community

on one occasion that his housing application would be denied because of his criminal record. Complaint, ¶ 7.

A prima facie claim of "disparate treatment" or "discriminatory intent" under the Fair Housing Act can be established "by showing that animus against the protected group was a significant factor in the position taken by the … decision-makers themselves or by those to whom the decision-makers were knowingly responsive." *Fortune Soc'y v. Sandcastle Towers Hous. Dev. Fund Corp.,* 388 F.Supp.3d 145, 177 (E.D. N.Y. 2019)*, quoting Mhany Mgmt. Inc. v. City of Nassau,* 819 F.3d 581, 606 (2d Cir. 2016). In the complaint, Plaintiff does not state any facts supporting a conclusion that the result of Plaintiff's agent/employee's alleged encounter with the Community's agent was motivated by anything other than the criminal record he disclosed during the alleged phone call.

Significantly, "criminal record" is not a characteristic or class of persons protected by the Fair Housing Act. *Evans v. UDR, Inc.,* 644 F.Supp.2d 675, 691 (E.D. N.C. 2009) ("the FHAA clearly does not prohibit landlords from denying a person occupancy on the basis of his criminal record"). Absent factual allegations demonstrating that consideration of a criminal record is used as a "pretext" for unlawful discrimination, there is no discriminatory "purpose" in violation of the Act. Facts supporting a claim of pretext might be, for instance, allegations that a particular screening criterion is applied only to some applicants and not to others, or not as a usual and customary practice, and that the deviation from usual practices correlates to a protected characteristic. *See United States v. Collier,* 2010 WL 3881381 (W.D. La. Sept. 28, 2019); *United States v. Reddoch*, 467 F.2d 897, 898 (5th Cir. 1972); *United States v. West Peachtree Tenth Corp.* 437 F.2d 221 (5th Cir. 1971). The instant complaint is devoid of any allegation that Defendant deviated from its normal protocol to discriminate against Plaintiff's agent/employee on the basis

of race or national origin.

The only alleged discriminatory act on the part of Defendant is a single interaction with Defendant's agent. The complaint includes no facts alleging that housing applicants not of "Hispanic / Latino heritage or descent" or of a certain race are not subject to the same criminal history screening purportedly imposed upon Plaintiff's agent/employee. Absent the allegation of any facially plausible facts that application of criminal history screening is a mere pretext for discrimination based on a protected characteristic, Plaintiff has failed to state a claim for discriminatory treatment under the Fair Housing Act and the complaint should be dismissed.

**B.     Plaintiff's complaint does not establish a prima facie claim for unlawful disparate impact (or unlawful discriminatory effects) under the Fair Housing Act.**

Alternatively, a facially neutral practice or policy can be challenged under the Fair Housing Act as having an unlawful "disparate impact," because it "has a segregative effect or that it makes housing options significantly more restrictive for members of a protected group than for persons outside that group." *Hallmark Developers, Inc. v. Fulton Cty., Ga.,* 466 F.3d 1276, 1286 (11th Cir. 2006). The brief 30 paragraph complaint explicitly concludes without factual basis that Defendant's "policy" is "unlawful" under the Fair Housing Act because "it has a "disparate impact on Hispanic/Latino people." *See e.g.,* Complaint ¶¶ 8, 12, 14, 15, 17, 22. Plaintiff's conclusions of the existence, operation, and application of an alleged "policy" that is "unlawful" and has a "disparate impact" on a protected class are wholly unsupported by any facts.

In 2015, the Supreme Court held that disparate impact claims ("claims asserting an unjustified, disproportionately adverse effect on minorities") are cognizable under the Fair Housing Act. *Texas Department of Housing & Community Affairs v. Inclusive Communities Project, Inc.,* 576 U.S. --, 135 S.Ct. 2507 (2015) (*"Inclusive Communities"*). The Supreme Court recognized

that since the Fair Housing Act makes it unlawful to "otherwise make unavailable or deny" housing because of a protected class, disparate impact claims that focus on the "results" of a housing practice must be included as part of the Fair Housing Act's "central purpose ... [of] eradicat[ing] discriminatory practices" in the United States. *Id.* at 2521. But the Court also recognized that a disparate impact claim of discrimination could pose a danger of "displac[ing] valid governmental and private priorities" with a solely race-based decision, such as the adoption of "numerical quotas." *Id.* at 2522-24. To safeguard against that danger, the Supreme Court in *Inclusive Communities* made clear that "a disparate-impact claim that relies on a statistical disparity must fail if the plaintiff cannot point to a defendant's policy or policies causing that disparity." *Id.* This mandate to show both a policy *and* a "robust causality [. . .] ensures that '[r]acial imbalance ... does not, without more, establish a prima facie case of disparate impact." *Id.*, citing *Wards Cove Packing Co. v. Atonio*, 490 U. S. 642, 653, 109 S. Ct. 2115, 104 L. Ed. 2d 733 (1989), superseded by statute on other grounds, 42 U. S. C. §2000e-2(k).

Even before the Supreme Court's decision in *Inclusive Communities,* however, the Eleventh Circuit had already held that at least some "relevant statistical showing" is the minimum required to support a disparate impact claim of discrimination under the Fair Housing Act. In *Schwarz v. City of Treasure Island,* 544 F.3d 1201 (11th Cir. 2008), an operator of halfway houses for recovering alcoholics (considered "disabled" under the Fair Housing Act) alleged that a city's zoning ordinance had a disparate impact on the protected class of people with disabilities. The operator's claim failed and was dismissed, however, because he provided no comparative data to support a prima facie case of disparate impact. The *Schwarz* plaintiff failed to provide "an adequate statistical foundation for a disparate impact claim because he presented no comparative data at

all," relying instead on a "bald assumption" that the ordinance's effect on the halfway houses would have a disparate impact on recovering alcoholics. *Id.* at 1217-18.

Under *Inclusive Communities,* therefore, a prima facie case of disparate impact discrimination will fail unless it demonstrates *both* relevant statistical disparity (evidence comparing members of the protected class affected by the challenged policy with non-members affected by the challenged policy), *and also* a plausible showing of "robust causality" between the challenged policy and that statistical disparity. *Inclusive Communities* at 2522-2523. Succinctly, a "plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact." *Id.; see also Oviedo Town Center II, L.L.L.P. v. City of Oviedo, Florida,* 759 Fed.Appx. 828 (11th Cir. 2018) (granting defendants' 12(b)(6) motion to dismiss complaint discrimination under the Fair Housing Act).

> Plaintiff blithely concludes without any factual support in its complaint that
>
> > [1]   Defendant's criminal history policy and/or practice is arbitrary, artificial, and unnecessary to achieve a valid interest or legitimate objective such as a practical business, profit, policy consideration, or requirement of law;
> > [2]   there is a robust causal link between the challenged policy or practice and a disparate impact on Hispanic / Latino people that shows the specific practice is the direct cause of the discriminatory effect;
> > [3]   the disparity caused by the policy and/or practice is significant; and
> > [4]   there is a direct link between the disparate impact and Plaintiff's injury.

Complaint ¶22. In other words, the Complaint merely states the elements of a prima facie case of disparate impact discrimination under the Fair Housing Act as set forth in *Inclusive Communities.*

As fully set forth below, the Complaint fails to provide factual support for the existence of any allegedly facially neutral policy with unlawful discriminatory effects, fails to provide any

factual support for any racial disparity in housing applications, and also fails to prove any "robust causality" between an alleged policy and an alleged statistical racial disparity. Defendant's motion to dismiss must be granted.

> *i.    The Complaint does not state the existence of any facially neutral policy with allegedly discriminatory effects.*

Plaintiff's only factual allegation of the existence of facial neutral policy with a racially discriminatory effect is a single paragraph of the Complaint:

> As part of Plaintiff' FFH Alliance's investigation into potential discrimination in the housing market by Defendant, Mr. Turizo inquired into Defendant's policy regarding the criminal record of applicants applying to rent the Dwelling, to which Defendant responded by stating a felony conviction would result in an automatic denial of an applicant seeking to rent the dwelling.

Complaint ¶ 7. Plaintiff apparently supposes that a description of a single encounter with a single agent of Defendant is sufficient to preliminarily establish the existence of a customarily applied policy. Plaintiff is incorrect. A "threshold" foundation for a claim of disparate impact is factual support for the proposition as to whether a "policy" allegedly causing the discriminatory effect even exists. *See Fortune Society,* 388 F.Supp.3d at 173 (denying summary judgment to plaintiff on disparate impact claim for alleged criminal history ban because "plaintiff cannot meet its burden without [an] initial showing that a ban exists").

Other than the allegation of a one-time decision stated during Plaintiff's verbal exchange with Defendant's agent, the Complaint is devoid of any factual allegations of the existence of a challenged "policy." While a single encounter might be factually sufficient for a case of intentional discrimination (or disparate treatment) to survive a motion to dismiss, a single encounter does not a "policy" make. *Inclusive Communities,* 135 S.Ct. at 2523 (a disparate impact plaintiff "will not easily be able to show ... a policy causing a disparate impact because [. . .] a one-time decision

may not be a policy at all."). As Plaintiff's complaint fails to meet even the prima facie element of a disparate impact case (identifying an operative policy allegedly causing a discriminatory effect), the complaint must be dismissed.

> ***ii.  Disparate impact discrimination theory requires statistical evidence of racial disparity and a causal connection between that disparity and the challenged policy to make out a prima facie claim of violation of the Fair Housing Act.***

As in the failed claim of disparate impact discrimination in *Schwarz,* Plaintiff here has provided "no comparative data at all" to show that any particular class of people protected by the Act are disproportionately impacted by the challenged alleged "policy" of criminal history screening. *Schwarz,* 544 F.3d at 1217-18. Like the *Schwarz* plaintiff, Plaintiff here makes nothing but a "bald assumption" that the challenged policy "has a disparate impact on individuals of Hispanic/Latino heritage and/or descent." Complaint at ¶ 22. Plaintiff not only neglects "to allege facts at the pleading stage or produce statistical evidence" in support of this "naked conclusion" of disparate impact, but also fails to provide any evidence of the "robust causality" between the challenged policy and the disparate impact claimed. *Oviedo Town Center II* 759 Fed. Appx. at 835 (upholding trial court's finding of lack of *prima facie* case of disparate impact).

Plaintiff's attempts to meet the Supreme Court's *Inclusive Communities* prima facie standard for a claim of disparate impact rest solely on its vague reference to "recent data, studies and HUD findings" that "Hispanic / Latino people are arrested, convicted, and imprisoned at vastly disproportionate rates in Florida and the country as a whole." Complaint ¶ 14. The Complaint appears to ascribe the alleged "recent data, studies and HUD findings" regarding disproportionate representation of "Hispanic / Latino" people being "arrested, convicted, and imprisoned" to a 2016 HUD "Office of General Counsel Guidance on Application of Fair

Housing Act Standards to the Use of Criminal Records by Providers of Housing and Real Estate-Related Transactions." As a "guidance" document, this memorandum only expresses HUD's enforcement policies for those allegations of disparate impact discrimination it investigates or prosecutes. Plaintiff's general conclusory allegation of unlawful disparate impact from criminal history screening are based solely on quotations of hearsay policy statements from HUD's guidance document, are not factually specific to the challenged alleged "policy" at issue in the Complaint, and are inaccurately and misleadingly excerpted by Plaintiff. Specifically, the Complaint alleges that

> The U.S. Department of Housing and Urban Development ("HUD") has found that "where a policy or practice that restricts access to housing on the basis of criminal background *has a disparate impact on individuals of a particular race ...* such policy or practice is unlawful under the Fair Housing Act if it is not necessary to serve a substantial, legitimate, nondiscriminatory interest of the housing provider."

Complaint ¶ 13. This "finding" of HUD is predicated on the assumptions that the application of a particular "policy" is established and that a statistical racial disparity is established. The instant Complaint does neither, and Plaintiff's reliance on the HUD guidance for factual evidence of its allegations is misplaced and insufficient as matters of fact and law.

Perhaps more significantly, HUD's policy position on disparate impact has changed since the 2016 guidance document. Specifically, in a 2019 final rule on the "Fair Housing Act's Discriminatory Effects Standard," HUD newly adopted the formula for establishment of a prima facie case of disparate impact discrimination in Fair Housing Act cases set forth by the Supreme Court in *Inclusive Communities.* 84 Fed. Reg 160 p. 42854 at 42857 (August 19, 2019). HUD's preamble explanation of the 2019 final rule explains that "claims relying on statistical disparities must articulate how the statistical analysis used supports a claim of disparate impact by providing

an appropriate comparison which shows that the policy is the actual cause of the disparity." 84 Fed. Reg. at 42858. Without that showing, a plaintiff has not alleged the prima facie element of a "robust causal link" between the policy and the claimed disparate impact required by the *Inclusive Communities* decision.

Further, HUD's preamble to the final rule also notes that a disparate impact plaintiff must "allege that the challenged policy or practice has an adverse effect *on members of a protected class.*" 84 Fed. Reg. 42858. HUD states that "it would be insufficient to allege only that the plaintiff is a member of a protected class and would be adversely affected or that members of a protected class are impacted as are all individuals." *Id.* This latter insufficient allegation is the interpretation of the complaint most favorable to Plaintiff. Even with the presumption of factual truth, the complaint cannot be saved from its fatal defect of failure to state a claim upon which relief can be granted as a matter of law.

As Plaintiff has failed to meet its burden of establishment of even a prima facie case of disparate impact discrimination under the Fair Housing Act, Defendant's motion must be granted and Plaintiff's Complaint dismissed in full.

Respectfully submitted this 26th day of March 2020.

/s/ *Stephen P. Drobny*
Stephen P. Drobny
Florida Bar No. 55732
JONES WALKER LLP
201 S. Biscayne Blvd., Ste. 2600
Miami, Florida 33131
Telephone: (305) 679-5700
Fax: (305) 679-5710
Email: sdrobny@joneswalker.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of March 2020, I presented the foregoing to the Clerk of Court for filing and uploading to the Court's electronic portal system, at which time all parties registered to receive notice electronically received electronic service of the foregoing.

>                    /s/  Stephen P. Drobny
>                    Stephen P. Drobny